DOMENGEAUX, Judge.
This action arises out of a contract for the construction of a platform which was to extend into the Whiskey Chitto River in Allen Parish, Louisiana, its main purpose being to sustain and support an irrigation pump and engine. Plaintiff- — Willis Young filed suit for damages against defendant— Deo Fruge Contractor, Inc., for the latter’s alleged breach of the implied warranty of performing the abovementioned work in a good workmanlike manner and/or negligent design of said platform resulting in its failure to perform the purposes for which it was constructed.
After a trial on the merits, the District Judge denied plaintiff’s claim at his costs and rendered judgment in favor of the defendant contractor. This matter is not before us on plaintiff's devolutive appeal.
Plaintiff is in the business of rice farming and irrigation, and furnished water for some 10,000 acres of rice lands in Allen Parish, which (prior to 1973) were irrigated from his pumping plant situated on the Whiskey Chitto River in said parish. The irrigation water reached the various acreages through a system of irrigation canals, also owned and operated by plaintiff. From 1952 to 1972 the pumping plant was situated on a wooden platform, extending into the river, The platform was of a trestle or bridge type construction and was approximately 175 feet in length from the pump intake portion in the river to a reservoir. The water was pumped from the *7 river to the reservoir, and in turn distributed through the canal system.
Because of the vestiges of age and use the plaintiff decided that the old platform should be either repaired, reconstructed, or replaced. In that connection he contacted Deo Fruge, a road and bridge contractor and sole owner of defendant corporation. Consequent to their discussions plaintiff and defendant entered into the following written contract:
“June 30, 1972
D. FRUGE CONTR., INC. CONTRACT WITH WILLIS YOUNG
Contractor will build one 32 ft. X 32 ft. platform on pilings, buckhead (sic) with 14 ft. wings and fill with dirt as agreed. Will furnish all labor, material and welding for a 30 inch discharge pipe, cooling system and hookup one engine and one pump with Mr. Young’s own engine, pump, gearhead, gas line, cooling coil, and upright tank.
The above described job is for the cash price of $20,000.00 payable on date of completion. Completion date is to be 20 days from July 1, 1972 with the exception of an act of God.
D. FRUGE CONTRACTOR, INC.
By: /s/ Clyde Fruge
Sworn and subscribed before me this 7 day of July, 1972.
/s/ J. E. Vizinat_
NOTARY PUBLIC
/s/ Willis Young
Willis Young
/s/ Paul Bazin_
Witness
/s/ Joseph D. Johnson Witness
No plans or specifications were prepared on this project. Fruge acknowledged that he and another employee of defendant made the determinations as to the length of the piling, the depth that they were driven into the bed of the river, the size of the bulkhead and the depth that it would penetrate, if any, below the bed of the river, as well as all other details in connection with the bracing of the installation.
The new platform was, as agreed, subsequently constructed about 75 yards south of the . old platform at the location of a high bluff, presumably to minimize the effects of floods or overflow of the river which occurred periodically. The new construction differed from the old platform in that it was of a ramp type, dirt filled foundation with bulkhead, pilings, supports, braces, etc. The evidence indicates that the new platform with its ramp construction was more economical to build than one of the old trestle type.
Defendant completed the platform in December, 1972.[1] Upon testing the pump system, however, a leak was discovered in a discharge pipe which was immediately and satisfactorily repaired by defendant, and plaintiff accepted the finished product as being a good job. The machinery was not operated again until the following pumping season in the early spring of 1973.
*8 In regard to the alleged construction defects, plaintiff and others who gave testimony on his behalf indicated essentially the following: About two weeks after the pumping operations were commenced in the early spring of 1973, a “hole” in the dirt ramp adjacent to the wooden bulkhead was observed. Subsequently, as the pumping continued, the hole became larger and in about a three week period the full 32 feet width of the dirt ramp had washed out. As a result the plaintiff had his son move dirt with a tractor blade from the surrounding area into the hole so as to be able to walk from the bank to the platform. Continued pumping caused the hole to wash out again. Plaintiff then became fearful that all of the sand and dirt inside the bulkhead would erode and be suctioned into the intake pipe and into the pump. In addition he felt that too much pressure was being placed on the bulkhead structure. As a result he employed another contractor, Wilburn Landry, to remove the dirt previously placed against the bulkhead, and provided access to the platform with a board extending from the bank to the platform. Plaintiff thereafter continued the pumping operation, but later noticed that the bulkhead started “kicking into the river”. The first row of pilings broke shortly thereafter with the next and adjacent rows subsequently collapsing, until the entire platform (except the portion nearest the center of the stream on which the pump and engine were situated) had completely given way. Plaintiff was later forced to remove his irrigation pump and engine from the collapsing structure. Excellent photographs introduced into evidence depict graphically the end result of the collapse.
Notwithstanding the debilitating effect of the structure, plaintiff managed to complete his pumping operations for the 1973 pumping season.
Interestingly enough, throughout the deteriorating episodes described above, the plaintiff did not contact the defendant nor anyone expert in the construction field concerning the difficulties. When the first hole appeared plaintiff did not inquire as to the cause of it from defendant. Instead, he took it upon himself to push dirt into the hole after it was allowed to become so large that it consumed the entire width of the bulkhead. As aforementioned, he later changed his mind and had the dirt removed.
Plaintiff’s reason for not having the difficulty attended to properly was allegedly because of his pumping operations and the urgency of furnishing water to the various rice acreages, so much so that he didn’t have time to fix it.
Plaintiff contends that the original hole and subsequent enlargement thereof was caused by faulty construction which permitted seepages to undermine the dirt ramp. He further alleges that the collapse was specifically due to defendant’s failure to bury to a sufficient depth the support pilings which subsequently were caused to break and bend either by the floodwaters of the river and/or by erosion under the bulkhead wall caused by the pump sucking sand from underneath the structure and adjacent bank.
The defendant, on the other hand, contends that the collapse was due to plaintiff’s own neglect combined with unusually high tides. Specifically it is argued that the dirt seepage occurred from the top down, due to the fact that during the original construction the plaintiff caused defendant’s dozer operator to cut the shoulder of the ramp in order to make it level with the reservoir, rather than on an incline.[2] Defendant argues that this action in turn allowed water to flow on the ramp and subsequently cause erosion. De *9 fendant testified that he warned the plaintiff of this, but that plaintiff insisted on doing it his way. In addition it was pointed out that plaintiff allowed excessive spillage from his cooling system to fall on the dirt ramp.
Plaintiff contends on this appeal (and apparently did so at trial) that under the principles set forth in Joyner v. Aetna Casualty & Surety Company, 259 La. 660, 251 So.2d 166 (1971) an inference of faulty workmanship and/or materials arose under the facts of this case and the burden of proof was therefore upon the defendant to establish that the defects and/or damages resulted from causes other than faulty workmanship and/or materials.
Joyner held:
“An inference of faulty workmanship or material arises when construction designed as a permanent installation fails shortly after being put into use. * * * The effect of the inference is to place upon the contractor the burden of establishing that the soon-appearing defect in the work and the resultant damages did not result from his faulty workmanship or materials but instead from other cause.”
We do not quarrel with the foregoing legal principle but agree with the trial judge’s findings that it is inapplicable in the instant case. As pointed out by the Supreme Court in Joyner on “Application for Rehearing”, 251 So.2d 172:
“This holding was not intended to modify the requirement that before this inference of fault arises, the party claiming injury must establish by a preponderance of the evidence that after the construction left the control of the contractor upon its delivery to the owner, no fault independent of the contractor’s workmanship or material (such as the injured party’s own fault) caused the failure. The party injured must also, of course, prove by such preponderance that his damages were caused by reason of the failure of construction.”
In this regard the trial judge concluded essentially that plaintiff failed to establish by a preponderance of the evidence that the defendant-contractor’s faulty workmanship and materials caused the structure’s collapse, as well as the fact that he (plaintiff) was free of independent fault in causing the failure. In reaching this conclusion he made the following factual findings. First, the pilings which supported the structure were sufficiently embedded and actually snapped or splintered above the ground rather than being displaced. The cause of the collapse was tremendous pressure against the bulkhead, the specific source of which, however, he could not determine. If undermining of the river bank or bulkhead was present, as alleged by plaintiff, it was caused by erosion (no evidence of undermining was found elsewhere in the vicinity along the river line) due to plaintiff’s own improper handling of the dirt and sand embankment rather than the suction pump. He further pointed to possible causes as rising water resulting in erosion or buildup of discharge sand against the bulkhead.
Under the peculiar facts of this case we cannot say the trial judge erred in not applying the presumption of Joyner against the defendant. Neither can we say he erred in his factual findings to the effect that plaintiff failed to establish by a preponderance of the evidence, once the construction left the control of the defendant, that he (plaintiff) was free of independent fault in causing the failure, nor that his damages were caused by reason of faulty construction. Accordingly, plaintiff simply failed to prove his case.
For these reasons we affirm the decision of the trial court. Costs are assessed against plaintiff-appellant.

Affirmed.

*10 WATSON, J., dissents and assigns written reasons.

. Tlie time restrictions of the contract were waived by the parties and the defendant was permitted to construct the installations at any time following the pumping season of 1972, provided that the work was completed prior to the pumping season in the early spring of 1973.

. Apparently plaintiff had some physical disability and wished to eliminate the necessity in the future of disembarking from his vehicle to walk to the platform.